# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| CHRISTOPHER W. WEBB, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. CIV-10-425-FHS-SPS |
| DAVID MICHAEL CATHEY, | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court on Defendant David Michael Cathey's motion for summary judgment (Docket No. 63) and the court's own motion to consider dismissal of the case as frivolous under 28 U.S.C. § 1915. Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections who is incarcerated at Lawton Correctional Center in Lawton, Oklahoma, filed this civil rights action while he was a pretrial detainee in the Bryan County Jail. He alleged in his vague and confusing amended complaint that Defendants David Cathey, an investigator for the Bryan County District Attorney's Office, and Julie Nafieh, Bryan County Assistant District Attorney, violated his civil rights. (Docket No. 8). The defendants allegedly abused their authority by pursuing fabricated, malicious, and retaliatory charges against him for Kidnaping, Financial Exploitation of a Mentally Disabled Person, and Conspiracy to Commit a Felony in Bryan County District Court Case No. CF-2009-386. Plaintiff asks for monetary damages, declaratory relief, and injunctive relief.

The defendants filed motions to dismiss based on absolute immunity (Docket Nos. 20 and 21). The court granted Defendant Nafieh's motion, but denied Defendant Cathey's motion without prejudice to filing another dispositive motion (Docket No. 25).

When plaintiff commenced this lawsuit, he was awaiting trial in Case No. CF-2009-386. According to the Oklahoma Supreme Court Network at www.oscn.net, he was found guilty of Count 3, Conspiracy to Commit a Felony, After Former Conviction of a Felony, on September 27, 2011, and his conviction and sentence were affirmed in *Webb v. State*, No. F-2011-905 (Okla. Crim. App. Jan. 29, 2013).

In response to the court's order directing plaintiff to show cause why this case should not be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994) (Docket No. 44), plaintiff advised the court that he is not challenging his conviction for Conspiracy (Docket No. 45). Instead, he claims he was falsely and maliciously arrested for Kidnaping and Financial Exploitation, resulting in a $250,000 bond, and a trial that took two and one-half years for final disposition, before he was acquitted of those two charges. He asserts the arrest for these two charges were fraudulent, malicious, and retaliatory.

Defendant Cathey alleges he is entitled to summary judgment, because probable cause existed for plaintiff's arrest for Kidnaping and Financial Exploitation. Having moved for summary judgment in their favor, the movants are required to show the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Summary judgment is not appropriate if there exists a genuine material factual issue such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986). Plaintiff, as "the nonmoving party may not rest on [his] pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." *Applied Genetics Int'l. v. First Affiliated Sec., Inc.*, 912 F.2d 1238 (10th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In this regard, all evidence of the nonmoving party is deemed true, and all reasonable inferences are drawn in favor of the nonmoving party. *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 114, 158-59 (1970)). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249. With these standards in mind, the court turns to the merits of Defendant Cathey's motion.

> The elements of Kidnaping are:
> First, unlawful;
> Second, forcible seizure and confinement or inveiglement;
> Third, of another;
> Fourth, with intent to confine;
> Fifth, against the person's will.

OUJI-CR-4-110.

> The elements of Financial Exploitation are:
> First, exploitation;
> Second, of a mentally disabled person, vulnerable adult, or incapacitated adult;
> Third, for financial gain.

OUJI-CR-4-4147 (Modified)[1]

---

[1] This is the instruction provided to the jury in plaintiff's case.

3

> [A]n arrest is valid and does not violate the Fourth Amendment if the warrant underlying it was supported by probable cause at the time of its issuance; this holds true even if later events establish that the target of the warrant should not have been arrested. Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime.
>
> Arrest warrant affiants violate the Fourth Amendment when they knowingly . . . , or with reckless disregard for the truth, include false statements in the affidavit, or knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause. In a case involving information omitted from an affidavit, the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant. . . . However, allegations of negligence or innocent mistake are insufficient.

*Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007) (internal citations and quotations omitted).

> Procedurally we approach the probable cause question this way. Where false statements are alleged to have been *included* in an arrest warrant affidavit or grand jury testimony, probable cause is determined by setting aside the false information and reviewing the remaining truthful facts. Similarly, where true information has been allegedly and unlawfully *omitted* from an affidavit or grand jury proceeding, the existence of probable cause is determined by examining the affidavit [or proceedings] as if the omitted information had been included and inquiring if the affidavit [or proceedings] would still have given rise to probable cause.
>
> Substantively, the question whether probable cause existed in light of the--so defined--factual record does not require proof beyond reasonable doubt. It does not even require the suspect's guilt to be more likely true than false. Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion.

*Kerns v. Bader*, 663 F.3d 1173 1188 (10th Cir. 2011) (internal citations and quotations omitted) (emphasis in original). Statements of an alleged victim during a personal interview

are sufficient to establish probable cause. *Barham v. Town of Greybull Wyoming*, No. 10-CV-261-D, 2011 WL 2710319, at *11 (D. Wyo. July 11, 2011) (citations omitted), *aff'd*, 483 Fed. Appx. 506, 2012 WL 1995057 (10th Cir. June 5, 2012).

Defendant Cathey has submitted the following relevant documents in support of his motion: (1) Cathey's Affidavit of Probable Cause, dated June 23, 2009 (Docket No. 63-1); plaintiff's Felony Information and Written Plea Admonishments for Failure to Register as a Sex Offender in Wise County, Texas (Docket No. 63-2 at 8-10); Psychological Report, IQ and Mental Status for Ashley Clowdus, dated July 1, 2008, indicating she is moderately mentally retarded (Docket No. 63-3); Affidavit of Defendant Cathey regarding his investigation of plaintiff's alleged crimes (Docket No. 63-4); Ashley Clowdus' Signature Card dated May 7, 2009, from First National Bank / First Convenience Bank (Docket No. 63-5); Copies of bogus checks presented by plaintiff for the purchase of merchandise at the Choctaw Travel Plaza, dated May 10, 2009 (Docket No. 63-6); Affidavit by Salomon Pedraza, dated May 18, 2009, concerning his knowledge of the crimes (Docket No. 63-8); Copies of bogus checks written on Ashley Clowdus' account on May 16, 2009 (Docket No. 63-9); Statement of rights signed by Salomon Pedraza on May 20, 2009 (Docket No. 63-10); Report by Officer Jim Smarr dated June 1, 2009 (Docket No. 63-11); and Statement of rights signed by plaintiff on June 1, 2009 (Docket No. 63-12).

The record shows that on or about May 7, 2009, plaintiff took Ashley Clowdus to a First National Bank Texas / First Convenience Bank located in a Wal-Mart in Texas to open a bank account in her name, but using his address. On May 10, 2009, plaintiff presented two bogus checks at the Choctaw Travel Plaza for the purchase of goods. On May 10, 2009, Ronald Mayes presented two bogus checks at the Choctaw Travel Plaza to purchase goods.

5

On May 15, 2009, plaintiff offered to take Ms. Clowdus from her home in Texas to see her boyfriend in Oklahoma. On May 16, 2009, plaintiff, Salomon Pedraza, and Ms. Clowdus purchased cigarettes at the Choctaw Travel Plaza with bogus checks.

On May 17, 2009, plaintiff, Pedraza, Shannon Billey, and Ms. Clowdus traveled together to the Choctaw Travel Plaza to purchase cigarettes with bogus checks written on Ms. Clowdus' new account. Plaintiff and Billey waited outside, while Ms. Clowdus and Pedraza went inside and attempted to purchase cigarettes. A clerk at the Choctaw Travel Plaza, having knowledge of the previous day's bogus checks, contacted Tribal Police and stalled Ms. Clowdus and Pedraza until authorities arrived. The Choctaw Tribal Police conducted a field investigation and determined probable cause to arrest Pedraza. Choctaw Tribal Police Officer Nathan Calloway believed Ms. Clowdus was in distress and contacted her mother Patricia Clowdus. Patricia Clowdus provided Officer Calloway with details about Ashley Clowdus's mental disability and made arrangements to travel to Oklahoma and get her.

Defendant David Cathey investigated, upon referral by the Choctaw Tribal Police to the Bryan County District Attorney's Office. Cathey received information from Officer Calloway about Calloway's investigation and the arrest of Pedraza. On May 20, 2009, Cathey conducted a voluntary recorded interview of Pedraza, who provided information about his relationship with plaintiff and his knowledge of Ashley Clowdus. Pedraza informed Cathey of the bogus check scheme he knew plaintiff had conducted in the past, as well as plaintiff's involvement in passing bogus checks using Ashley Clowdus' account.

Pedraza stated that plaintiff was supplying methamphetamine to Ms. Clowdus, and he described plaintiff as a "con guy" who recruited people who were "kinda vulnerable."

6

Pedraza described Clowdus as someone who was normal, but vulnerable. She had brought a little dog with her that seemed very important to her, and Pedraza informed Cathey that he would not have put it past plaintiff to have threatened her dog.

Pedraza confirmed that plaintiff had refused Clowdus' request to be taken home the "first night," because plaintiff wanted her to write more checks. According to Pedraza, it was plaintiff's "scam," and Pedraza and Shannon Billey were aware of plaintiff's ability to take advantage of vulnerable people. When Officer Calloway arrested Pedraza and advised that Pedraza might be charged with kidnaping, Pedraza stated, "I did not kidnap her, Chris Webb did!" Shannon Billey was not interviewed because of apparent intoxication.

On May 27, 2009, Defendant Cathey conducted a recorded interview with Ashley Clowdus, who indicated she suffered from memory loss. Her demeanor was consistent with the information Patricia Clowdus had provided Officer Calloway concerning Ashley's mental disability. Ashley Clowdus stated that plaintiff supplied her with drugs, and she used methamphetamine while she was in Oklahoma. She said she was at a hotel one night and a house on a different night. She described herself as being under plaintiff's control, and stated he had threatened to harm her dog, if she did not shut the dog up or do what plaintiff wanted her to do.

Clowdus further stated that she had attended a school for the learning disabled until she graduated, and she had problems with reading, writing, and comprehension. According to Clowdus, plaintiff attempted to have sexual relations with her, but she stopped him and he became very angry. Plaintiff also prevented her from using a phone, and he slept with his phone in his pants. He made her sign checks at various merchants in Durant, but she was using drugs and could not remember everything. She believed that plaintiff was taking her

7

to Oklahoma to find her boyfriend who recently had moved there, after they had a fight. Clowdus further stated that plaintiff threatened her and her family, if she told anyone about what he had done.

Patricia Clowdus was present during the recorded interview with her daughter Ashley. Both women reported that a message from Oklahoma was on the telephone answering machine after Patricia had picked up Ashley. The caller stated, "I am going to fuck you up, Ashley." Ashley believed the caller was plaintiff. Patricia also informed Defendant Cathey that plaintiff had called her the morning after she brought Ashley back from Oklahoma. Plaintiff told Patricia that Ashley wanted to go to Oklahoma, so he took her, and there was nothing wrong with it. Plaintiff also said he had checked Ashley's driver's license and knew she was 30 years old. Plaintiff told Patricia he did not understand why people were saying Ashley was mentally disabled, and Patricia responded by telling him that Ashley was legally disabled. Plaintiff denied that his address was on the checks, until Patricia said it was the same address listed for him on the sex offender registry. Plaintiff said he no longer lived there, and he had given Ashley the checks when they were at that address.

Patricia Clowdus also related that about two weeks before Ashley went to Oklahoma, which was about the time the bank account was opened, Ashley had started talking about a new friend named Chris who was taking her out for meals and who was very friendly. Patricia stated that Ashley was very trusting. According to Patricia, Ashley walked everywhere and frequently asked complete strangers for rides.

Defendant Cathey interviewed Kevin Reynolds on May 29, 2009, and Reynolds stated he met Ashley Clowdus on the afternoon of May 16, 2009, while at his cousin Shannon Billey's home. Ashley was afraid and told Reynolds that plaintiff had brought her there and

8

was keeping her there. She said that plaintiff was not allowing her to take her medication and was keeping her from going home. She also told Reynolds that plaintiff was taking her to different stores and making her write checks for merchandise that plaintiff sold. Reynolds had observed plaintiff smoking a glass pipe and being mean to Ashley. Reynolds took her to his home and told his mother what was happening. Reynolds reported that Ashley was afraid to call her mother or the police, and she eventually left to return to the other house. Ashley said she was afraid of plaintiff and afraid not to go back.

On May 29, 2009, Defendant Cathey interviewed Aleshia D. Cole, who was Kevin Reynold's mother. She confirmed Reynold's description of events from May 16, 2009. Ms. Cole believed someone called phone numbers provided by Ashley, and someone had agreed to come get her. Ms. Cole did not want Ashley in her home, because she recently had regained custody of one of her children. Ms. Cole's impression of Ashley was that she was mentally handicapped, because not everything Ashley said made sense. Later on the evening of May 16, 2009, Cole observed Salomon Pedraza and Ashley Clowdus in Lowe's, buying power tools. It appeared to Cole that Ashley was being forced to make the purchases. When Cole left the store, she observed plaintiff in the parking lot, waiting for Pedraza and Ashley.

On May 29, 2009, Defendant Cathey interviewed Tim Williams, Aleshia Cole's husband. Mr. Williams related information similar to that of his wife and her son. He described Ashley as appearing very upset and "hysterical." Based Reynold's statements, Williams contacted Lt. Mike Woodruff of the Durant Police Department and reported that Ashley had been kidnaped and was being held against her will in Durant. Williams reported that Ashley appeared to be mentally retarded. She, however, declined Woodruff's offer to purchase a bus ticket to go home.

9

On June 1, 2009, plaintiff was arrested while hiding outside the residence of Salomon Pedraza and Shannon Billey. The arrest was made by Sgt. Smarr, pursuant to an outstanding warrant issued by Bryan County.

On June 1, 2009, after advising plaintiff of his rights and obtaining a written waiver of those rights, Defendant Cathey conducted a recorded interview of plaintiff. Plaintiff advised that he met Ashley Clowdus through a mutual friend and claimed he did not know her very well. He claimed he allowed Ashley to use his address, so her mother would not know about the bank account. He denied bringing her to Oklahoma, and denied staying with her in a motel in Durant, Oklahoma.

In the course of his investigation, Defendant Cathey interviewed numerous other individuals, including plaintiff's wife, who confirmed many of the statements made by the other individuals who were interviewed. Plaintiff was arrested on June 22, 2009, for his failure to register as a sex offender. Between June 23 and June 25, 2009, Cathey continued to investigate potential crimes committed by plaintiff. A warrant was issued by the Bryan County District Court for the charges of Kidnaping, Financial Exploitation of a Mentally Disabled Person, and Conspiracy to Commit a Felony.

After careful review, the court finds Defendant Cathey based his Affidavit of Probable Cause on information received from the plaintiff himself and from numerous other individuals, including the alleged victim, who had personal knowledge of plaintiff's bogus check scheme and his actions regarding Ashley Clowdus. Furthermore, there was sufficient evidence that Ms. Clowdus was mentally disabled and vulnerable and that plaintiff gained financially from his scheme. The court further finds that Defendant Cathey has demonstrated there was a substantial probability that the crimes of Kidnaping and Financial Exploitation

of a Mentally Disabled Person had been committed and that plaintiff had committed the crimes. Plaintiff disputes the truthfulness and motivation of Defendant Cathey and the individuals interviewed by Cathey, but the court finds plaintiff has failed to show there is a genuine issue for trial.

Based on the foregoing reasons the court finds the allegations in plaintiff's complaint are vague and conclusory, and the allegations do not rise to the level of a constitutional violation. The Tenth Circuit Court of Appeals consistently has held that bald conclusions, unsupported by allegations of fact, are legally insufficient, and pleadings containing only such conclusory language may be summarily dismissed or stricken without a hearing. *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990); *Lorraine v. United States*, 444 F.2d 1 (10th Cir. 1971). "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981) (citing *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980)).

The court authorized commencement of this action *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (e) of that statute permits the dismissal of a case when the court is satisfied that the complaint is without merit in that it lacks an arguable basis either in law or fact. *Nietzke v. Williams*, 490 U.S. 319 (1989); *Yellen v. Cooper*, 828 F.2d 1471, 1475 (10th Cir. 1987).

**ACCORDINGLY,** this action is DISMISSED AS FRIVOLOUS. This dismissal shall count as a STRIKE, pursuant to 28 U.S.C. § 1915(g).

DATED this 31st day of March, 2014.

Frank H. Seay
United States District Judge